Michael BOOMS, Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 00–10348–BC.

United States District Court,
E.D. Michigan,
Northern Division.

July 30, 2003.

Richard M. Amsbaugh, Borella, Stockton, Plymouth, MI, for Plaintiff.

Peter A. Caplan, United States Attorney's Office, Detroit, MI, for Defendant.

*OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO AFFIRM THE DECISION OF THE COMMISSIONER*

LAWSON, District Judge.

The plaintiff filed the present action on September 14, 2000 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits after January 2, 1998 under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment requesting that a portion of the Commissioner's decision be reversed and the case remanded for an award of benefits beyond the closed period. The defendant filed a motion for summary judgment requesting that the Commissioner's decision be affirmed.

Magistrate Judge Binder filed a Report and Recommendation on May 2, 2001 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, to which the defendant responded, and this matter is now before the Court.

The Court has reviewed the file, the Report and Recommendation of the Magistrate Judge, the plaintiff's objections to the recommendation, and the Commissioner's reply to those objections, and has made a *de novo* review of the administrative record in light of the parties' submissions. Administrative Law Judge (ALJ) John M. Hammerly, who conducted the administrative hearing in this case, found that the plaintiff was disabled within the meaning of the Social Security Act for a closed period beginning July 29, 1995 and continuing up to January 2, 1998. The ALJ also found that the plaintiff realized medical improvement after that date that affected his ability to work, and therefore no longer was disabled. The plaintiff objects to the Magistrate Judge's recommendation that the ALJ's decision be affirmed on several grounds. First, he states that the Magistrate Judge failed to address his arguments challenging the ALJ's adverse credibility determination. Second, he objects because the Magistrate Judge failed to address his claim that the ALJ improperly rejected opinions of treating sources. Third, he challenges the determination that the plaintiff enjoyed medical improvement after the latter part of 1997, which the plaintiff contends is the appropriate comparison point. The Commissioner disputes the claim that the comparison point is late 1997, pointing to his own internal rules as stated in his Program Operations Manual System (POMS) that is used in applying the regulations, specifically 20 C.F.R. § 404.1594. The Magistrate Judge failed to address the comparison date issue, however. In any event, the plaintiff insists that he did not enjoy medical improvement and that the ALJ misread reports relating to his carpal tunnel syndrome symptoms; the Magistrate Judge failed to consider the neurogenic bladder dysfunction as an impairment; and too much emphasis was placed on Dr. David Montgomery's post-surgical evaluation of the plaintiff's improvement to his symptoms arising from his vertebrogenic ailments. Fourth, repeating his argument about the comparison date, the plaintiff contends that any improvement actually occurred prior to late 1997 or early 1998 and therefore did not constitute "medical improvement" as a matter of law, another

argument that the Magistrate Judge failed to consider. Fifth, the plaintiff argues that the Magistrate Judge omitted references to certain portions in his summary of the administrative record and thus gave a false impression of the plaintiff's true condition and limitations.

The plaintiff, who is now thirty-eight years old, applied for a period of disability and disability insurance benefits on June 2, 1997, when he was thirty-two years old. He previously had worked as a farm hand, a laborer for an irrigation company, and eight years as a production worker in a metal forming company. In early 1995, the plaintiff began to experience back pain that increased in severity so that he eventually became unable to work. He underwent a laminectomy on June 29, 1995, the date that he alleged his disability commenced.

The plaintiff's claim for disability was based on intractable back pain, carpal tunnel syndrome, and a spastic bladder. His application was initially denied, and the denial was upheld on reconsideration. The plaintiff then appeared before ALJ Hammerly on January 15, 1999 when he was thirty-three years old. ALJ Hammerly filed a decision on April 5, 1999 finding that the plaintiff was disabled for the closed period noted above, and that he was not disabled from and after January 2, 1998, and therefore denied benefits for all but the closed period of disability. The ALJ reached this conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since June 29, 1995 (step one); the plaintiff suffered from several impairments that the ALJ found be "severe" including bilateral carpal tunnel syndrome, vertebrogenic disorder of the lumbosacral spine, and adjustment disorder, but he did not find the plaintiff's bladder problems constituted

an impairment (step two); none of these impairments by themselves or in combination met or equaled a listing in the regulations (step three); and the plaintiff could not perform his previous work as a farm hand, truck driver, or factory worker, which a vocational expert classified as semi-skilled "at the low end" and requiring a medium-to-heavy level of exertional effort (step four). In applying the fifth step, the ALJ found that before January 2, 1998, the plaintiff retained the residual functional capacity to perform a limited range of unskilled sedentary work in which he was unable to use his hands, lift more than five pounds, sit or stand for prolonged periods of time exceeding fifteen minutes, and was required to take breaks and lie down during the work day. The ALJ concluded that the Social Security Administration failed to carry its burden of demonstrating that the plaintiff could perform other jobs in the regional economy prior to January 2, 1998. However, the ALJ also found that the plaintiff enjoyed medical improvement that affected his residual functional capacity after January 2, 1998, such that he could perform unskilled sedentary to light work with a sit or stand option, no repetitive bending or deep bending from the waist, and lifting limited to ten to fifteen pounds. Relying on the testimony of the vocational expert, the ALJ found that jobs such as machine operator, assembler, inspection and checker, cashier, security service reception, surveillance monitoring, telecommunications jobs, and dispatching fit within those limitations, and that these jobs existed in significant numbers in the regional economy.

The plaintiff does not challenge the determination that he was disabled during the closed period of disability. The ALJ did not find that the plaintiff's severe impairment resulting from his adjustment disorder caused any functional or vocation-

al limitations, and the plaintiff likewise does not challenge that determination. Those issues, therefore, are not presently before the Court. The plaintiff does take great issue, however, with the determination that he was not disabled after January 2, 1998, and contends that this finding is not supported by substantial evidence in the whole record.

■ The plaintiff has the burden to prove that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir.1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990).

Under 42 U.S.C. § 423(d)(1)(A) & (B), a person is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy." Further, "[a] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(1)(C).

To determine disability, the Commissioner has prescribed the five-step process noted above and set forth in 20 C.F.R. § 404.1520. However, if the plaintiff has satisfied his burden through the first four steps of the analytical process, the burden shifts to the Commissioner to establish that the plaintiff possesses the residual functional capacity to perform other substantial gainful activity. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). *See also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). "To meet this burden, there must be a finding supported by substantial evidence that

plaintiff has the vocational qualifications to perform specific jobs." *Varley*, 820 F.2d at 779 (internal quotes and citations omitted).

■ The ALJ found that the Commissioner met this burden for the period after January 2, 1998. The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). *See also Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053 (6th Cir.1983). The reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The substantial evidence standard "presupposes that there is a zone of choice within which decisionmakers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotes and citations omitted). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

However, a substantiality of evidence evaluation does not permit a selective

reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 388 (internal quotes and citations omitted). *See also Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000).

Once it is accepted that the plaintiff was disabled prior to January 2, 1998, the issue in this case becomes whether the plaintiff's physical impairments that resulted in the disability finding dissipated, such that he was no longer disabled after that date. The ALJ found that the plaintiff was disabled due to his back and hand impairments as of the alleged onset date of June 29, 1995. On that date, the plaintiff underwent a lumbar laminectomy performed by Dr. Gerald Schell. In August of that year, the plaintiff was evaluated by Dr. Arno Weiss for possible carpal tunnel syndrome, and Dr. Weiss performed a left carpal tunnel release procedure on September 1, 1995. He performed the same surgery on the right side approximately one month later. Meanwhile, the plaintiff's back symptoms failed to improve and he experienced continuous and intractable pain. He was seen by a number of physicians and eventually was evaluated by Dr. David M. Montgomery at Royal Oak Beaumont Hospital in April 1997. Dr. Montgomery performed spinal fusion surgery at the L5/S1 level on July 1, 1997. The ALJ found that the plaintiff's symptoms in his hands and back progressively decreased when compared to his condition on June 29, 1995, resulting in a favorable effect on the plaintiff's ability to work.

A person previously determined to be disabled is not entitled to the continuation of benefits if the disability dissipates to the extent that the individual is able to perform gainful activity. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994). A prior disability determination does not create a presumption of continuing disability, *see* 42 U.S.C. § 423(f)(4); rather, the prior determination is used as a reference point from which to evaluate whether any medical improvement has been realized relating to the individual's ability to work. 42 U.S.C. § 423(f). The Secretary defines "medical improvement" as "any decrease in the severity of your impairment(s) which [*sic*] was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1).

The medical improvements that are relevant to a disability determination must be those that increase an individual's functional capacity to engage in gainful activity, that is, the ability to do basic work. 20 C.F.R. 404.1594(b)(3), (4). To make this determination, the Commissioner employs an eight-step sequential analysis that examines whether the beneficiary is working (step 1); if not, does the impairment meet or equal a listing (step 2); if not, has there been *"any"* medical improvement (step 3); if so, does the medical improvement relate to the ability to work (step 4); if there is no improvement related to ability to work, does an exception apply (step 5); if there is an improvement related to work ability, are the current impairments alone or in combination "severe" (step 6); if so, does the beneficiary's residual functional capacity permit performance of past work (step 7); if not, does the beneficiary have the RFC to perform other work (step 8). *See* 20 C.F.R. § 404.1594(f).

■ The eight-step analysis, of course, must be based upon the plaintiff's physical conditions both before and after the comparison point. The plaintiff argues that the comparison point should be established at late 1997 or early 1998. He cites no authority for this proposition. The Commissioner, on the other hand, cites to the POMS provisions, noted above, for a determination of the "comparison point date." According to POMS DI 28010.105(A), "the CPD [comparison point date] is the most recent favorable decision that the individual was disabled or continued to be disabled." In this case, there was no prior disability determination. Rather, the ALJ found that the plaintiff was disabled for a closed period in the same April 5, 1999 decision in which the ALJ also determined that medical improvement had occurred. Under those circumstances, the POMS directs that the Commissioner "[u]se onset date as the comparison point." POMS DI 28010.105(D)(3)(a). The Court finds that the interpretation uniformly applied by the Secretary is consistent with 42 U.S.C. § 423(f) and with the Secretary's regulation, 20 C.F.R. § 404.1594. Accordingly, the Court finds that the disability onset date, in this case June 29, 1995, is the correct comparison point date in this case.

■ The plaintiff testified at the administrative hearing, however, that his symptoms had not improved and that he was not able to return to work of any type. Plaintiff's counsel points to the testimony of a vocational expert, excerpted in the plaintiff's brief in support of motion for summary judgment, that supports that conclusion. The vocational expert cited as reasons supporting the conclusion that the plaintiff could perform no work, the plaintiff's lack of "stamina required to perform sustained work on a full-time basis due to difficulties with pain, frequency of changing positions from standing, sitting to laying down along with the needs to take naps on a fairly frequent basis as a result

of getting insufficient sleep." Tr. at 471. The plaintiff fails to note, however, that the vocational expert was responding to a hypothetical question that assumes that the plaintiff's testimony was fully credible, a conclusion that the ALJ eventually rejected. The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts. In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonable deems the claimant's testimony to be inaccurate." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir.2003).

Although subjective complaints of pain may be sufficient to support a claim of disability, *see Glass v. Sec'y of Health Educ. & Welfare*, 517 F.2d 224, 225 (6th Cir.1975), Congress has also stated that "there must be medical signs and findings, established by medically acceptable or clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain." 42 U.S.C. § 423(d)(5)(A). The Secretary has established a regulation that implements this Congressional directive. Under 20 C.F.R. § 404.1529(b) (1995), the plaintiff must establish an underlying medical condition, and then show either (1) that objective medical evidence confirms the severity of

the alleged pain arising from the condition, or (2) the medical condition, objectively determined, is at a level of severity which can reasonably be expected to give rise to the alleged pain. If the plaintiff satisfies this burden, the ALJ must then evaluate the intensity and persistence of the plaintiff's pain symptoms in light of objective medical evidence including the activity which precipitates or aggravates the plaintiff's symptoms, the plaintiff's daily activities, the intensity and duration of his symptoms, and medications, treatment and other means to relieve the symptoms. 20 C.F.R. § 404.1529(c) (1995).

The ALJ concluded, however, that the plaintiff overstated his disability due to pain and therefore the ALJ discounted his testimony. In evaluating a claimant's complaints of pain, the ALJ quite properly may consider the claimant's credibility. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981). In assessing the credibility of a witness, personal observations are important. In fact, it is one of the reasons underlying the preference for live testimony. *See 2 McCormick on Evidence* § 245, at 94 (4th ed.1992); cf. *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Thus, an ALJ, who has observed a witness' demeanor while testifying, should be afforded deference when his credibility findings are assessed. *See Jones*, 336 F.3d at 474–75; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987). The Court is not obliged to accept an ALJ's assessment of credibility, however, if the finding is not supported by substantial evidence. *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir.1978).

In this case, substantial evidence of significant medical improvement affecting the plaintiff's ability to work is furnished by his treating physician and surgeon, Dr. David Montgomery. Dr. Montgomery's reports, adequately summarized by the Magistrate Judge, show that the plaintiff's back symptoms progressively improved following the July 1997 lumbar fusion surgery. Dr. Montgomery reported in November 1997 that the plaintiff could return to light duty work, albeit with restrictions, in January 1998. *See* Tr. at 422. This constitutes a significant improvement over the plaintiff's condition on June 29, 1995. Dr. Montgomery's opinion is consistent with the opinion of an evaluator, Dr. Maynard C. Buszek, who examined the plaintiff on October 10, 1997, presumably at the request of a workers' compensation insurer. Dr. Buszek stated that the plaintiff, at that point, could engage in sedentary activities, but he should avoid all lifting, bending below the level of the knees, and be allowed to change his position at will, but also noted that the plaintiff had not yet reached his level of maximum medical improvement. *See* Tr. at 365–69.

The plaintiff argues that there is other evidence in the record that does not support a finding of medical improvement, and the plaintiff is correct. Drs. Thomas Byran and Jamie F. Tan each filled out forms indicating that the plaintiff was disabled on the basis of the Commissioner's Listing 1.05C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C. The ALJ rejected these reports because Dr. Tan did not treat the plaintiff's back condition, and neither physician pointed to the objective medical evidence to support the conclusions in their assessments. *See* Tr. at 20. The record supports the ALJ's observations. The plaintiff testified at the administrative hearing that Dr. Tan took him on as a patient after the plaintiff was in the hospital at Harbor Beach, Michigan, and served as the plaintiff's family physician "for a while." He stated that Dr. Tan treated

him for gastrointestinal problems, and that he did not treat his back problem. Tr. at 453. Dr. Bryan's treatment notes appear in the record at pages 229 through 255 of the Administrative Record. They contain an X-ray report of the right and left knees indicating a normal study, and a bone density study of the lumbar spine and left hip that is within normal limits, but do not show any muscle spasms, restrictions in range of motion, sensory, reflex or motor loss, or muscle weakness that would support the statements on the Social Security Assessment Form.

The plaintiff also relies upon a similar form completed by Dr. Glenn Krieger on April 16, 1998. *See* Tr. at 412–418. Dr. Krieger began treating the plaintiff on January 19, 1998. On February 10, 1998, he wrote a report to an insurance claims manager, *see* Tr. at 425–29, in which he essentially concurred in the finding of Dr. Montgomery that the plaintiff could return to some sort of light duty work, but could not return to his former employment, especially if his restrictions could not be accommodated. Dr. Krieger stated:

> In regards to his work situation, I do agree that unless Mr. Booms can return with restricted work it is not in his best interest to return to his prior line of work[,] which required a great deal of heavy lifting, bending and twisting and repetitive movements of his hands and wrists, all of which would worsen his symptoms and progress his problem. He should continue off work until restricted work can be made available.

Tr. at 429. Although Dr. Krieger's records also contain statements that are inconsistent with these conclusions, the ALJ's decision to rely on the statements of Dr. Montgomery over those of Dr. Krieger in these circumstances is not error.

■ Concerning the plaintiff's carpal tunnel syndrome, there is no question that the records show that there was some improvement in his symptoms after June 29, 1995, following the carpal tunnel release surgeries in September and October 1995. The plaintiff claims that his symptoms recurred, but a May 23, 1997 letter from his attending hand surgeon, Dr. Kevin Chung, states that the plaintiff's symptoms of numbness and tingling disappeared after the release surgery, and Dr. Chung concludes that "Mr. Booms has successful carpal tunnel releases, which have alleviated his symptoms." Tr. at 330. Subsequent studies have confirmed a neurological etiology for the plaintiff's complaints of persistent pain in his palm, but these difficulties appear to be related to the ulnar nerve, not the median nerve, which is implicated by carpal tunnel syndrome. The plaintiff points to letter from Dr. Dean Louis to another doctor, dated September 29, 1997, in which Dr. Louis stated that he believed that "the patient [the plaintiff] possibly has recurrence of his left carpal tunnel syndrome." Tr. at 353. Dr. Lewis continues to state, however, that nerve conduction studies must be performed to confirm that suspicion. The electrodiagnostic test report of January 28, 1998, however, did not address the median nerve, and only confirmed "bilateral compressive neuropathies of the *ulnar* nerve at the elbow." Tr. at 419 (emphasis added). The evidence does not support the plaintiff's argument that his carpal tunnel symptoms did not improve over the relevant period.

■ Finally, the plaintiff claims that the ALJ and the Magistrate Judge failed to address his complaints regarding his neurogenic bladder. It is true that the plaintiff did testify at the administrative hearing about functional difficulties that

arose from these symptoms. *See* Tr. at 451–52. However, the medical records contain statements attributed to the plaintiff that although his symptoms persisted through March 1997, they were "notably worse" the prior year, Tr. at 313; and Dr. Krieger reported in February 1998 that the condition had "mostly resolved." Tr. at 428. The Court finds no error, therefore, in the ALJ's omission of any restrictions in the plaintiff's residual functional capacity to account for the neurogenic bladder disorder.

As noted above, this Court's task in reviewing a Social Security disability determination is a limited one. The ALJ's findings are conclusive if they are supported by substantial evidence, according to 42 U.S.C. § 405(g). For the reasons stated above, the Court rejects the plaintiff's arguments recited in his motion for summary judgment. Although the parties and the Court would have been better served had the Magistrate Judge chosen to address all of the arguments posed by the plaintiff, the Court does not find that the Magistrate Judge's report, to the extent that it did deal with some of the arguments addressed, was erroneous. Moreover, the Court has conducted a *de novo* review of the entire record and the materials submitted by the parties, and finds that substantial evidence does support the decision of the Administrative Law Judge.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation is **ADOPTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 14] is **DENIED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 15] is **GRANTED.** The findings of the Commissioner are **AFFIRMED,** and the complaint is **DISMISSED** with prejudice.