### George LOWERY, Plaintiff,

v.

### COMMISSIONER OF SOCIAL SECURITY, Defendant.

#### No. 01–10129–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Nov. 2, 2004.

Victor L. Galea, Sr., Davidson, Breen, Saginaw, MI, for Plaintiff.

Geneva S. Halliday, Detroit, MI, for Defendant.

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO AFFIRM THE DECISION OF THE COMMISSIONER.**

LAWSON, District Judge.

The plaintiff filed the present action on March 26, 2001 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award him benefits. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision. Magistrate Judge Binder filed a report and recommendation on October 17, 2001 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff made three arguments in his motion for summary judgment and he repeats them in his objections. First, he states that the Administrative Law Judge (ALJ) committed error by "mechanically applying" the section of the Medical–Vocational Guidelines using the plaintiff's actual age when he was very close to the next age bracket at the time of the ALJ's decision. Second, he contends that uncontradicted medical evidence from his treating sources establishes at least that he was disabled for a closed period and that the ALJ failed to address that option when he denied benefits in total. Third, the plaintiff argues that the ALJ and the magistrate judge improperly rejected as not fully credible the plaintiff's hearing testimony describing his limitations.

The plaintiff, presently sixty years old, applied for a period of disability and disability insurance benefits on January 10, 1997 when he was fifty-two years old. He

had worked for over thirty years as a core processor, a machine operator, and a furnace operator—all heavy factory jobs. The plaintiff had last worked on March 29, 1996, which was the date he alleged his disability began. He had a long history of pain and restricted movement in his right knee, and later he developed left shoulder pain and left hand numbness as a result of severe degenerative cervical disc disease. He underwent two surgical procedures, one for a total right knee replacement and the other to fuse his cervical discs, and he recovered to the point, in the ALJ's view, that he could perform light duty work.

In his application for disability insurance benefits, the plaintiff alleged that he was unable to work due to cervical spine pain, left hand numbness, and chronic right knee pain. On November 15, 1998, the plaintiff appeared before ALJ William J. Musseman when he was fifty-four years old. ALJ Musseman filed a decision on January 29, 1999 in which he found that the plaintiff was not disabled. The ALJ reached that conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since March 29, 1996 (step one); the plaintiff's degenerative disc disease, which had resulted in cervical fusion, and chronic right knee pain were "severe" within the meaning of the Social Security Act (step two); the plaintiff did not have an impairment or combination of impairments that meet or equal a listing in the regulations (step three); and that the plaintiff could not perform his previous work, which was characterized as unskilled and requiring heavy exertion (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity for a range of light work limited by the restrictions of lifting no more than twenty pounds; no frequent lifting of objects more than ten pounds; no squatting, kneeling, crawling, or climbing; no prolonged walking or standing of more than ten minutes per hour; allowance of the option to sit or stand with frequent alternation; and the opportunity to use the non-dominant arm to assist the dominant arm. Relying on the testimony of a vocational expert, the ALJ found that there were a significant number of jobs in the national economy suitable for the plaintiff because he could perform the full range of light work with limitations. Based on that finding and using the Medical–Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 2 as a framework, the ALJ then concluded that the plaintiff was not disabled within the meaning of the Social Security Act. Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on January 23, 2001.

The medical evidence showed that the plaintiff's knee problems caused him to stop working in March 1996, and he underwent a total right knee arthroplasty in June 1996 performed by Dr. James Weir. For a few months thereafter the plaintiff walked with the assistance of a cane, and he engaged in prescribed physical therapy. The cane was discontinued in September 1996. By November, the plaintiff was doing manual labor, but he was not returned to his previous work at that point. Dr. Weir's January 20, 1997 office note states that the plaintiff was able to shovel snow but was off work because of a "cervical spine problem."

The cervical spine problem apparently overlapped the right knee treatment; the medical records document complaints of left shoulder pain in September 1996 and a MRI study in October 1996 showed degenerative changes. The plaintiff treated with Dr. Gerald Schell who, after a course of

conservative care, performed a cervical dissectomy and fusion on April 4, 1997. The plaintiff improved steadily and had no signs of radiculopathy in July 1997 when he was examined by Dr. Siva Sankaran for the Disability Determination Service.

It is a fundamental principle that the plaintiff bears the burden of proving entitlement to benefits under Title II of the Social Security Act, which means that the plaintiff must establish that he suffers from a disability, as that term is defined in the Act. *See Boyes v. Sec'y of Health & Human Services*, 46 F.3d 510, 512 (6th Cir.1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). A claimant suffers from a disability "only if his physical or mental ... impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)(B). The concept of disability, then, relates to functional limitations. Although these functional limitations must, of course, be caused by a physical or mental impairment, in the end, "[i]t is an assessment of what [the claimant] can and cannot do, not what she does and does not suffer from." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.2002) (referring to assessment of residual functional capacity).

■ The Commissioner concluded that the plaintiff was not disabled because he retained the capacity to perform some light-duty work. The Court's task in reviewing a Social Security disability determination is a limited one. The ALJ's findings are conclusive if they are supported by substantial evidence, according to 42 U.S.C. § 405(g). Consequently, the Court's review is confined to determining whether the correct legal standard was applied, and whether the findings are supported by substantial evidence on the whole record. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir.2003). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec'y of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence exists in the record. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Thus, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Services*, 893 F.2d 106, 108 (6th Cir.1989). The Sixth Circuit has stated that the role of the Court "is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony." *Wright*, 321 F.3d at 614. Therefore, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

■ The plaintiff argues in this Court that the ALJ misapplied the Medical–Vocational Guidelines in making the determination that the plaintiff is not disabled. The Medical–Vocational Guidelines, also referred to as the "grid rules," allows the Secretary to take "administrative notice"

of the availability of jobs in the national economy that can be performed by individuals who have the personal characteristics that Congress deems relevant: the claimant's age, education, job experience, and functional capacity to work. *See* 42 U.S.C. §§ 423(d)(2)(B). *See Abbott,* 905 F.2d at 926. They come into play at step five of the sequential evaluation process at which the Commissioner carries the burden to establish that the plaintiff possesses the residual functional capacity to perform substantial gainful activity. *Varley v. Sec'y of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987). *See also Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs." *Varley,* 820 F.2d at 779 (internal quotes and citations omitted). The plaintiff apparently reads the ALJ's decision as applying Grid Rule 202.13 to direct a finding of "not disabled." That rule is used when the claimant's exertional limitations allow no more than light duty work, the claimant has a high school education, prior work experience was unskilled, and the claimant is closely approaching advanced age, that is, fifty to fifty-four years old. The plaintiff maintains that because he was within two months of age fifty-five, Grid Rule 202.04 should have been applied instead, resulting in a finding of "disabled."

The plaintiff points to 20 C.F.R. § 404.1563(b), in which the Secretary has declared that he "will not apply the age categories mechanically in a borderline situation." As the plaintiff has acknowledged, the court of appeals has held that this regulation does not warrant an automatic transfer to the next age bracket in close cases. *See Crady v. Sec'y of Health & Human Services,* 835 F.2d 617, 622 (6th Cir.1987). Rather, according to Section 404.1563(a), the age evaluation must be made in consideration of the factors set forth in Appendix 2 to Subpart P of the regulations. There, the Secretary notes:

> Where the same factors in paragraph (c) [i.e., prior unskilled work, no transferable skills, or no prior work experience] of this section regarding education and work experience are present, but where age, though not advanced, is a factor which significantly limits vocational adaptability (i.e., closely approaching advanced age, 50–54) and an individual's vocational scope is further significantly limited by illiteracy or inability to communicate in English, a finding of disabled is warranted.

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(d).

In this case, there is no evidence of an educational deficit, illiteracy, or a limitation in the ability to communicate in English. However, the plaintiff argues that other factors should have been considered to place the plaintiff in the older age category, such as other physical limitations, the plaintiff's prior work history, and the lack of transferable skills. This argument ignores two main points: the ALJ in this case used the grid rules only as a framework for his decision so that a different age grouping may not have resulted in directing a finding of disability; and the factors to which the plaintiff points already were taken into account in the grids themselves. Here, the ALJ did not rely entirely on the grid, but rather made his own determination of the plaintiff's exertional capacity and then received evidence from a vocational expert on the availability of jobs that fit within those limitations. The plaintiff's focus on the appropriate grid rule is thus misplaced; it is the ultimate determination of his residual functional capacity to perform work—in light of his age, education, and job experience—that he criticizes.

■ However, the Court agrees with the magistrate judge that the ALJ's residual functional capacity determination is supported by substantial evidence. The plaintiff had severe limitations due to physical problems with his knee and cervical discs that were surgically treated and improved. None of his physicians ever gave an opinion that the plaintiff could not perform the tasks required of light duty work. The physicians' progress notes recounted that the plaintiff was engaging in activities that supported the ALJ's residual functional capacity finding. There was no error in referencing Grid Rule 202.13 as a framework for the decision.

■ Likewise, the ALJ did not commit error in failing to find a closed period of disability based on the evidence from Drs. Weir and Schell. There is no dispute that the Rule promulgated by the Secretary states that: "more weight [will be given] to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Moreover, the Sixth Circuit consistently has applied this rule to hold that a treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once. *See Jones v. Sec'y of Health & Human Services,* 945 F.2d 1365, 1370 n. 7 (6th Cir.1991); *Farris v. Sec'y of Health & Human Services,* 773 F.2d 85, 90 (6th Cir. 1985). If a treating physician's opinion is not contradicted, complete deference must be given to it. *Walker v. Sec'y of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir.1992); *King v. Heckler,* 742 F.2d

968, 973 (6th Cir.1984). However, the Sixth Circuit also has held that treating physicians' opinions "are only given such deference when supported by objective clinical evidence." *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003)). As noted, there is no medical opinion in the administrative record that the plaintiff could not physically perform work within the light duty restrictions within any consecutive twelve-month period. To the contrary, there is evidence of the plaintiff's physical capability consistent with that exertional level within twelve months after his various surgeries. The finding of no disability for either an open or closed period, therefore, is supported by substantial evidence.

■ Finally, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record. Under 20 C.F.R. § 404.1529(b), for subjective complaints to support a disability finding the plaintiff must establish an underlying medical condition, and then show either (1) that objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) the medical condition, objectively determined, is at a level of severity which can reasonably be expected to give rise to the alleged pain. If the plaintiff satisfies this burden, the ALJ must then evaluate the intensity and persistence of the plaintiff's pain symptoms in light of objective medical evidence including the activity that precipitates or aggravates the plaintiff's symptoms, the plaintiff's daily activities, the intensity and duration of his symptoms, and medications, treatment and other means to relieve the symptoms. 20 C.F.R. § 404.1529(c) (1995).

■ The ALJ concluded, however, that the plaintiff overstated his disability due to pain and therefore he discounted his testi-

mony. In evaluating a claimant's complaints of pain, the ALJ quite properly may consider the claimant's credibility. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Kirk v. Sec'y of Health & Human Services*, 667 F.2d 524, 538 (6th Cir.1981). In assessing the credibility of a witness, personal observations are important. In fact, it is one of the reasons underlying the preference for live testimony. *See 2 McCormick on Evidence* § 245, at 94 (4th ed.1992); cf. *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Thus, an ALJ who has observed a witness' demeanor while testifying should be afforded deference when his credibility findings are assessed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir.2003); *Villarreal v. Sec'y of Health & Human Services*, 818 F.2d 461, 463 (6th Cir.1987). The Court is not obliged to accept an ALJ's assessment of credibility if the finding is not supported by substantial evidence. *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978). For the reasons stated earlier, however, the Court finds that substantial evidence exists in the administrative record that supports the ALJ's assessment of the plaintiff's credibility.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. # 9] is **DENIED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. # 12] is **GRANTED.** The findings of the Commissioner are **AFFIRMED,** and the complaint is **DISMISSED** with prejudice.