NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0505n.06

Case No. 19-1139

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 07, 2019

DEBORAH S. HUNT, Clerk

JAVONTAE L. DYSON,                                    )
                                                      )
       Plaintiff-Appellant,                           )
                                                      )       ON APPEAL FROM THE UNITED
v.                                                    )       STATES DISTRICT COURT FOR
                                                      )       THE WESTERN DISTRICT OF
COMMISSIONER OF SOCIAL SECURITY,                      )       MICHIGAN
                                                      )
       Defendant-Appellee.                            )


BEFORE: SUTTON, COOK, and THAPAR, Circuit Judges.

COOK, Circuit Judge. Claiming that a disability prevented him from working, Javontae Dyson applied (as an adult) for 82 days of unpaid Social Security child's insurance benefits available to disabled children of a parent meeting the monetary threshold. An ALJ denied those benefits. Because substantial evidence supports that decision, we AFFIRM.

**I.**

After administrative denial of Dyson's claim, he requested a hearing and submitted evidence in support. In analyzing Dyson's claim, the ALJ applied the test laid out in 20 C.F.R. § 404.1520(a)(4) and determined Dyson to be unentitled to the benefits he sought.

From the evidence, the ALJ assessed that Dyson suffered from several severe impairments, including a "learning disorder," "adjustment disorder," and "personality disorder." Dyson complains that the ALJ's decision bypassed evidence of his other medical conditions:

schizophrenia, "maj[or] depression," asthma, knee problems, morbid obesity, hypertension, and glaucoma and retinal detachment in his right eye.

The ALJ's review of Dyson's severe impairments resulted in the administrative conclusion that those caused "mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties maintaining concentration, persistence or pace," but did not "meet or medically equal" the statutory criteria necessary to obtain benefits. That is, though Dyson's impairments compromised his "ability to perform work at all exertional levels," his "limitations have little or no effect on" his ability to perform jobs for which he is qualified.

After the Social Security Administration Appeals Council denied his appeal, Dyson brought this action, and the district court affirmed the ALJ's decision. This appeal followed.

**II.**

To collect child's insurance benefits, Dyson must show that, before reaching age 22, he was dependent on a parent receiving Social Security benefits and he could not "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least 12 months. 42 U.S.C. §§ 402(d), 423(d)(1).

So long as the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards," we will affirm it. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)). In the social security context, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Though we require "more than a mere scintilla," evidence that "a reasonable mind might accept as adequate to support a conclusion" is enough. *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). We will

affirm "if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

We review de novo the district court's conclusion that the ALJ supported his decision with substantial evidence. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).

## III.

According to Dyson, the ALJ erred in failing to consider his non-severe impairments as part of his "residual functional capacity," defined as "the most [a claimant] can still do despite" any "physical and mental limitations[.]" 20 C.F.R. § 404.1545(a)(1). He points to Social Security Ruling 96-8p, which commands an ALJ, in assessing a claimant's residual functional capacity ("RFC"), to consider evidence of non-severe impairments:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

As Dyson observes, the medical records before the ALJ show numerous health conditions beyond the three severe impairments of learning, adjustment, and personality disorders. And true, the ALJ ignored those other afflictions in denying benefits.

But substantial evidence supports this decision. For starters, the ALJ properly disregarded evidence of Dyson's other medical conditions when determining his residual functional capacity because the evidence fell outside the narrow temporal window relevant to Dyson's claim—December 31, 2007, his alleged onset date, through March 21, 2008, the day before his twenty-second birthday. For that 82-day period, Dyson submitted only one medical document—a "Missed

Appointment Record" for March 7, 2008. Dyson, therefore, provided no evidentiary support for establishing his medical conditions' impairing effects *during the relevant time period*. Dyson submitted plenty of records pertinent to before and after his claimed disability dates. But "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also* SSR 96-4p, 1996 WL 374187, at *1 (S.S.A. July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental impairment[.]'"). Dyson's diagnosis with an ailment in (or before) 2005 does not mean that ailment impaired him between December 31, 2007 and March 21, 2008. None of Dyson's records shed light on his level of impairment during that relevant time. And the evidentiary burden is Dyson's to carry. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (explaining that a claimant bears the burden of proving his lack of residual functional capacity).

Take Dyson's asthma. The record shows he suffered from asthma both before and after the relevant period, but not *between* December 31, 2007 and March 21, 2008. Even if we assume that he remained asthmatic during that time, Dyson proffers no evidence that asthma impaired his functioning. He maintains that his asthma "supported limitations that concerned the avoidance of pulmonary irritants, fumes, odors, dust, etc." Yet, though he bears the burden of proving his RFC, Dyson provides no corroborating medical evidence. Same goes for the rest of Dyson's non-severe conditions: The ALJ lacked evidence of how these impaired his functioning capacity during the relevant period. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (holding ALJ did not err by ignoring claimant's medically documented obesity when the claimant "failed to present evidence of any functional limitations resulting specifically from her obesity"); *Long v. Apfel*, 1 F. App'x 326, 332 (6th Cir. 2001) (affirming no-disability finding where "[t]he record . . .

does not contain a single statement by a treating physician indicating that Long's health problems result in any specific work-impairing limitations"). Given the lack of medical evidence supporting Dyson's stance that these health conditions impaired his work functioning, the ALJ appropriately bypassed his non-severe impairments in calculating his RFC.

Considering the three severe impairments recognized by the ALJ, substantial evidence supports the ALJ's decision here. The ALJ noted at the outset of his decision that Dyson received "no real care" and "no specific treatment" for his severe impairments before reaching age 22. And Dyson's testimony shows his ability to carry out daily functions: "he took care of four children, cooked, cleaned, and drove while working until March 31, 2008." Reviewing Dyson's educational and medical records, the ALJ further observed that Dyson could "read at the level of a sixth grader" and "handle simple math calculations," while having no "difficulty interacting with others[.]"

The ALJ next looked to an "impartial medical expert," Dr. Larry Kravitz, who reviewed Dyson's entire medical record and "opined that [he] could perform simple, repetitive tasks" notwithstanding his impairments. Finding Dr. Kravitz's conclusions consistent with the record, the ALJ gave them "significant weight[.]" The ALJ accordingly found that Dyson "could have handled simple instructions" during his period of alleged disability. He also reasoned that the record "showed [Dyson's] ability to work at the level of substantial gainful activity during which he took care of four children." Finding that he "was able to understand, remember, and carryout simple instructions; deal with changes in a routine work setting; and respond appropriately to supervision and coworkers," the ALJ concluded that "although [Dyson's] impairments were severe, they did not preclude him from completing basic work related activities."

By relying on Dr. Kravitz's opinion and ensuring that the opinion was consistent with Dyson's medical records, the ALJ supported his decision with substantial evidence. We regularly

find that substantial evidence supports a no-disability determination when the ALJ relies primarily on independent medical advice consistent with the claimant's medical records. *See Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (holding no-disability finding supported by substantial evidence where independent psychologists found that, though the claimant produced evidence of "work-preclusive limitations," he "could perform simple, repetitive tasks"). Just as in *Glasgow*, after reviewing Dyson's medical records, Dr. Kravitz opined that, even with his impairments, Dyson "could perform simple, repetitive tasks." The ALJ reasonably credited these conclusions as consistent with Dyson's medical records, and thus adequately supported his no-disability determination. *Id.* at 387.

Dyson protests that, in considering his severe and non-severe impairments, the ALJ should have obtained expert vocational testimony to determine whether Dyson could perform any of the work that "exists in significant numbers" in the regional or national economy. 42 U.S.C. § 423(d)(2)(A). As explained, though, the ALJ properly ignored Dyson's non-severe impairments. True, the Commission bears the burden of identifying a "significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile[.]" *Jones*, 336 F.3d at 474. But Dyson points to no authority requiring the ALJ to consult an expert. Indeed, we rejected that very argument not long ago. *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670–71 (6th Cir. 2009) (holding that, where, like Dyson, claimant had "solely nonexertional" impairments, ALJ did not err by relying on statutory guidelines rather than an expert).

Substantial evidence supports the ALJ's finding of Dyson's non-disability during the relevant period and the denial of child's insurance benefits; we will not disturb it. We AFFIRM.