NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0580n.06

No. 09-6081

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ROGER D. TILLEY,

    Plaintiff-Appellant,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

_____/

**FILED**
**Aug 31, 2010**
LEONARD GREEN, Clerk

On Appeal from the United
States District Court for the
Western District of
Tennessee at Memphis

**Before:**     **GUY, MOORE, and GRIFFIN, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**     Plaintiff Roger D. Tilley seeks review of the district court's decision affirming an administrative law judge's (ALJ) denial of his application for Social Security disability and supplemental security income benefits. Tilley asserts that the ALJ's determination was not supported by substantial evidence and that the ALJ did not accord proper weight to the opinion of his treating physician. Finding that the ALJ justifiably discounted the opinion of Tilley's treating physician, and that substantial evidence supported the ALJ's decision overall, we affirm.

**I.**

Tilley, who was born in 1954, went to school through the eighth grade and worked primarily as a machine operator from 1976 until January 2004. After he suffered a work-

related lower back injury in January 2004 and was involved in a minor car accident in February 2004, Tilley applied for Social Security Disability Insurance and Supplemental Security Insurance benefits from the Social Security Administration. Tilley alleged that his disability began April 7, 2004, due to degenerative disc disease (DDD) with radiculopathy status post lumbar spine surgery, Diabetes Mellitus, and Hypertension. Tilley's applications were never amended.

In connection with a worker's compensation claim, Tilley began treating with Dr. Carl Huff at the Bone and Joint Clinic in Dyersburg, Tennessee in early February, 2004. Dr. Huff referred Tilley to neurosurgeon Dr. Laverne Lovell for evaluation and treatment. Lovell examined Tilley in April 2004 and scheduled a bilateral L4-5 hemilaminectomy and diskectomy. When worker's compensation insurance coverage for the surgery was not authorized, however, that surgery was cancelled.

In October 2004 Tilley was examined by Dr. Donita Keown, who noted that she had reviewed reports from Drs. Huff and Lovell. Dr. Keown concluded her report as follows:

> IMPRESSION:
> 1.      Herniated disk versus degenerative disease of the lumbar spine. The claimant has excellent mobility in all planes of movement of the lumbar spine and cervical spine, normal motor strength, normal reflexia, and negative seated straight leg raises.
> 2.      Unremarkable examination of the cervical spine.
> 3.      No evidence of arthritis, nor complaints of arthralgia.
>
> WORK EXPECTATIONS: Mr. Tilley could sit, stand or walk eight hours in an eight-hour day. He could perform frequent lifting of 10 to 15 pounds, occasional lifting of 25 to 30 pounds.

Later that month, state agency medical consultant Dr. John Fields performed Tilley's

Physical Residual Functional Capacity Assessment. Dr. Fields found that Tilley could

frequently lift 25 pounds, and occasionally lift 50 pounds. Dr. Fields also determined that

Tilley could stand and/or walk for about 6 hours in an 8-hour workday, sit for the same

number of hours, and that Tilley's ability to push and/or pull (including operation of hand

and/or foot controls) was unlimited, other than as shown for lifting and carrying.

Tilley had a follow-up appointment with Dr. Lovell in November 2004. Dr. Lovell's

report indicates that based on the earlier information received, he opined in April that Tilley's

disc herniation and symptoms "were probably secondary to the motor vehicle accident."

After Dr. Lovell learned that the accident was relatively minor, and that Tilley had regularly

lifted more weight at the workplace than he had initially believed, he sent a hand-written note

recommending that he had changed his mind and that he was recommending that the injury

"be treated as a work injury as opposed to secondary to the motor vehicle accident." He then

wrote:

> In any event, nothing has happened for this patient. He remains off work. He
> continues to be in severe pain and is here today to proceed on with surgical
> intervention. I will recommend bilateral L4-5 hemi-laminectomy and
> diskectomy in his case.

Tilley saw Dr. Srivastava, his primary care physician, for evaluation of elevated blood

sugar levels prior to surgery. In January 2005 he was cleared for surgery by Dr. Srivastava,

and Dr. Lovell performed back surgery on Tilley later that month. A post-operative MRI

scan in March 2005 showed "[n]o evidence of disc herniation, fracture or abnormal

enhancement." After an early April 2005 follow-up with Dr. Lovell, the doctor noted that

the MRI showed "good decompression of the L4-5 nerve root." Dr. Lovell concluded with the following plan: "We will press on with work conditioning for two weeks and then a Functional Capacity Exam after that. I will see him in follow-up once the F.C.E. is done."

Tilley visited Dr. Lovell again on April 25, 2005, after undergoing a Functional Capacity Exam. Dr. Lovell reported that most of Tilley's "multitude of complaints" addressed issues unrelated to the work injury, such as burning in the feet and pain in his neck and shoulder. Dr. Lovell made the following notation:

> DISCUSSION: I have exhausted the postoperative work up, physical therapy and now attempts at a valid Functional Capacity Exam. I have also exhausted myself arguing with him on each one of his visits regarding all of his symptoms. This patient has applied for TennCare and Social Security on multiple occasions according to his testimony today to me and has been turned down each time. I have told him that I will not permanently disable him based on this Workers' Compensation disc surgery. I'm releasing him today with a permanent weight restriction of 50 pounds. Otherwise, he is free to perform work of any capacity within that weight restriction . . . [h]e is at maximum medical improvement as of today, 25 April, 2005 with a PPI rating (according to the AMA Guidelines, 5th Ed.) of ten percent (10%) for lumbar disc herniation with bilateral diskectomy at that level.

After this, Tilley visited Dr. Joseph Boals in June 2005, and continued treating with Dr. Srivastava. Dr. Boals cited the report of Dr. Lovell, repeated the 50-pound weight restriction, and opined that Tilley's impairment equaled "13% of the body as a whole." Dr. Boals wrote that an "excellent result" would have been a 10% impairment, and there would have been no weight restriction. He concluded by writing that Tilley "should avoid prolonged walking, standing, stooping, squatting, bending, climbing and excessive flexion, extension or rotation of the back. His one time weight limit should be determined by work trial." Records of Tilley's visits to Dr. Srivastava following surgery, dated in May, June, and

September, demonstrate a variety of complaints by Tilley, including complaints of lower back pain and arthritis as well as pain in Tilley's legs and feet. In September 2005, Tilley's main purpose for visiting Dr. Srivastava was to get a follow-up on blood pressure and blood sugars. The record from that visit indicates that Tilley had stopped taking his pills for back pain because they were causing constipation.

Following the Social Security Administration's initial denial of his applications for SSDI/SSI benefits, Tilley requested a hearing before an Administrative Law Judge (ALJ), which was held December 7, 2005. Finding that Tilley was not fully credible and that he retained the residual functional capacity to perform a wide range of medium work, including his past relevant work, the ALJ denied Tilley's applications for both Disability Insurance Benefits and Supplemental Security Income payments. That decision was issued in February 2006.

On review, the Social Security Appeals Council vacated the hearing decision and remanded the case for further proceedings, including another hearing. The Appeals Council found that the particular past relevant work considered by the ALJ was only five months in duration and did not generate enough income to be considered "qualifying past relevant work" under applicable regulations. Additionally, the Appeals Council found fault with nonspecific language used by the ALJ in addressing Tilley's residual functional capacity.

Between the December 2005 ALJ hearing and the Appeals Council's ruling in December 2006, the record shows Tilley made general follow-up visits to Dr. Srivastava in December 2005 and March 2006. The record indicates Tilley complained of pain in his back

on both occasions. Notes from the December 2005 visit reflect Tilley's statement to the doctor that he was "trying hard for his disability." Notes from additional doctor visits in June, September, and October 2006 are in the record, indicating no change in the treatment plan.

Tilley saw general practitioner Dr. Kurt Harnisch in April 2007, who performed an examination and an assessment of Tilley's residual functional capacities. Dr. Harnisch reported his assessment that Tilley could lift or carry less than 10 pounds occasionally and frequently; could stand or walk less than 2 hours in an 8-hour workday; could sit less than 6 hours in an 8-hour workday; required a job where he could alternate at will between sitting and standing; and should limit stooping, squatting, etc. Dr. Harnisch also noted Tilley's "significant manipulation limitations in reaching, handling . . . etc."; his fatigue, "which would preclude sustained physical activities"; depression suffered by Tilley; and Tilley's need for "chronic pain control."

Records from October 2006 through April 2007 reflect several visits by Tilley to the Tennessee Department of Health for checkups on chronic as well as temporary medical problems (*e.g.*, stomach trouble, sinus drainage, pain in hands). During this period Tilley had a heart stress test performed and appears to have complained only once of "neck pain running down shoulder and leg pain." On that date, he was instructed to "cont[inue] current meds as directed."

A second hearing before the ALJ was held in May 2007. The ALJ issued a decision finding Tilley ineligible for benefits. The ALJ concluded that the evidence in the record

showed that Tilley was capable of lifting and carrying at the medium level of exertion. For this reason, the ALJ determined that Tilley's residual functional capacity allowed him to perform his past relevant work as a machine operator, a job performed by Tilley for 18 months of the previous 15 years. Accordingly, the ALJ issued his decision finding Tilley had not been under a disability from April 7, 2004 through the date of his decision, July 24, 2007. The Appeals Council declined Tilley's request for review of that decision, following which Tilley filed this action.

## II.

To determine whether a claimant is disabled under the Social Security Act, the Commissioner of Social Security undertakes a sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Steps one through three require determinations on whether the claimant (1) is engaged in "substantial gainful activity;" (2) has a "severe medically determinable physical or mental impairment" meeting duration requirements; and (3) has an impairment that "meets or equals" one of the listings enumerated in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii). The fourth step requires the Commissioner's assessment of the claimant's "residual functional capacity," and determination of whether the claimant can perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the answer to the fourth inquiry is no, the fifth step—not at issue in this appeal—involves a determination of whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). On

all but the fifth step, the claimant bears the burden of proof. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Where the Appeals Council denies review of an ALJ's decision, that decision stands as the final decision of the Commissioner of Social Security. *See* 20 C.F.R. § 404.981. When we are reviewing that decision, we employ the same standard the district court used: we determine whether there is substantial evidence in the record to support the ALJ's findings. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a "scintilla" of evidence, but less than a preponderance; a finding that substantial evidence supports the agency's findings requires simply the existence of relevant evidence adequate to support a reasonable conclusion. *Ibid*. A decision will be affirmed where there is substantial evidence to support the agency's conclusion, even where a preponderance of the evidence exists to support the claimant's position. *Jones*, 336 F.3d at 474.

## A.      ALJ's Finding Regarding Medium Work

Tilley first claims on appeal that the ALJ's determination that he could perform the exertional demands of medium work is supported neither by the opinion of Dr. Boals nor by other medical evidence in the record. Tilley cites the Commissioner's definition of the full range of medium work, emphasizing its language that "being on one's feet for most of the workday is critical." Specifically, Tilley cites to Dr. Boals's opinion that Tilley "should avoid . . . prolonged walking, standing, stooping, squatting, bending, climbing and excessive

flexion, extension or rotation of the back," and asserts that this opinion would not allow an individual to perform medium work.

As defendant points out, however, the ALJ did not determine that Tilley could *generally* perform medium work; rather, he limited Tilley to sitting and standing as needed. In doing so, the ALJ adopted Dr. Lovell's 50-pound lifting restriction, with which Dr. Boals agreed, as well as Dr. Boals's restriction on sitting or standing for prolonged periods. Concerning the other medical evidence in the record, Tilley points to Dr. Keown's statement that he was limited to "frequent lifting of 10 to 15 pounds, occasional lifting of 25 to 30 pounds." Tilley asserts that the ALJ failed to explain how he resolved this "inconsistency" in the record. However, as specifically noted by the ALJ, Dr. Keown "found little in the way of positive objective findings," and performed her exam of Tilley *two months prior* to his surgery. This is a sufficient explanation for not fully adopting Dr. Keown's presurgical restrictions.

Tilley also asserts that the opinions of treating physician Dr. Srivastava and Dr. Harnisch are inconsistent with the ALJ's decision. The ALJ thoroughly examined the records pertaining to Tilley's visits to both doctors, and explained why he weighed their opinions as he did. The ALJ referenced Dr. Srivastava's opinion that Tilley was "incapable of performing even sedentary work," but noted that in fact Dr. Srivastava's treatment focus was on Tilley's blood sugar and diabetes. The ALJ considered the occasions, reflected in Dr. Srivastava's notes, where Tilley complained of back pain, and noted that the examinations were within normal limits. Furthermore, the ALJ fully explained why he considered the

"most compelling" evidence to be that of Tilley's surgeon Dr. Lovell, rather than Dr. Srivastava.

Concerning Dr. Harnisch's opinion, the ALJ pointed out that the largely indecipherable notes reflected just one visit, and primarily reiterated Tilley's subjective complaints. The ALJ pointed out that while Dr. Harnisch completed a Medical Source Statement recommending limitations on Tilley's "handling, fingering and feeling," there were no objective findings, and that the limitations represented a "gross exaggeration" on the part of Dr. Harnisch, one that led the ALJ to discredit Dr. Harnisch's opinion generally.

While Tilley asserts that Dr. Harnisch's report is "replete with medical findings," we concur with the ALJ's assessment, reiterated by the district court, that "Dr. Harnisch found few objective findings on his examination and generally recited Plaintiff's subjective complaints."[1] We find the ALJ's determination that the "objective findings do not support the extreme degree of limitation imposed by this physician" to be supported by substantial evidence.

## B.    Residual Functional Capacity to Return to Past Relevant Work

Tilley next claims that the ALJ improperly determined that he could return to his past relevant work as a machine operator/utility man. Tilley argues that he did not indicate that his past work as a machine operator involved any sitting at all. Tilley cites to his own report

---

[1]Tilley makes the additional argument that the ALJ improperly found he had no mental impairment, because Dr. Harnisch found limitations on Tilley's mental status examination. As refuted by defendant, however, Dr. Harnisch's specialty is family medicine, Dr. Harnisch made no recommendation for mental treatment for Tilley, and no other evidence of record indicated any issue with, or treatment for, Tilley's mental health.

that his past relevant work required, on a daily basis, 3 hours of walking, 3 hours of standing, .25 hours of climbing, 3 hours of stooping, 3 hours of crouching, 6 hours of handling, grabbing, or grasping big objects, and 2 hours of reaching. We note that the accuracy of such a report is questionable, given that the time spent on the tasks listed by Tilley add up to more hours than the 8-hour workday he reported on the previous page. Moreover, as defendant asserts, plaintiff stated in a different report in the record that the job of Machine Operator involved sitting for two hours. This is sufficient evidence for the finding made by the ALJ that plaintiff's past relevant work would allow for a sit and stand option, as needed.

**C.     Opinion of Treating Physician**

We stated in *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009) that:

> [i]n social security cases involving a claimant's disability, the Commissioner's regulations require that if the opinion of the claimant's treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and [is] "not inconsistent with the other substantial evidence in the case record," it must be given "controlling weight."

*Id.* at 266 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). Tilley asserts that the ALJ improperly accorded "little weight" to Dr. Srivastava's opinion that Tilley was not able to perform even sedentary work, and argues that the mere existence of a contrary opinion in the record did not give the ALJ a valid basis to reject Dr. Srivastava's opinion. Tilley contends that the ALJ's rejection of Dr. Srivastava's opinion did not comport with the regulations, which list six factors to consider in weighing medical opinions. *See* 20 C.F.R. § 404.1527(d).

Although treating physicians' opinions can be entitled to "controlling weight," it is clear that a treating physician's opinion that is not "well supported by medically acceptable clinical and laboratory diagnostic techniques," or is "inconsistent with the other substantial evidence," is not controlling. 20 C.F.R. § 404.1527(d)(2). While Tilley cites *Blakley v. Commissionr of Social Security*, 581 F.3d 399, 410 (6th Cir. 2009), in asserting that the ALJ improperly failed to address each of the regulatory factors in evaluating the opinion of the treating physician, *Blakely* does not support his argument. The *Blakely* decision, finding that the ALJ had failed to give good reasons for according less than controlling weight to the plaintiff's treating sources, remanded the case to the Commissioner for further proceedings.

Unlike in *Blakely*, the ALJ's decision in the instant case fully described the reasoning for discounting Dr. Srivastava's opinion. The ALJ thoroughly reviewed Dr. Srivastava's notes and found that his physical exams of Tilley were "essentially normal," and that the evidence contained "little or no objective findings showing any significant change in [Tilley's] medical condition since he was released by his surgeon in April 2005." Furthermore, the ALJ determined that the opinion of Dr. Lovell, Tilley's neurosurgeon, was entitled to more weight as a specialist and specific treater of Tilley's back problems, in accordance with 20 C.F.R. § 416.927(d)(5). We do not find that the ALJ's determination to accord greater weight to the opinion of Dr. Lovell was improper.

## D.     ALJ's Credibility Determination

The ALJ questioned Tilley's credibility in his decision:

[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected

to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

On review, "we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.

We find that substantial evidence supports the ALJ's determination concerning Tilley's credibility. For instance, the ALJ noted that the record contained "little or no" evidence of objective findings showing any change in Tilley's condition after April 2005. Furthermore, also noted by the ALJ, Tilley did not regularly complain of back pain to Dr. Srivastava and informed him at least once that he was "trying hard for his disability." The ALJ also noted that record documents from Tilley's post-surgery period indicated that Tilley "was unmotivated, prompting his post surgical physical therapy to be terminated." Similarly, the ALJ inspected records from the Tennessee Department of Health, and correctly noted that they showed "essentially normal findings on examinations and only intermittent musculoskeletal complaints."

Whether or not we would have come to the conclusion reached by the ALJ, we find that substantial evidence supports his decision. For the reasons given above, we **AFFIRM** the decision of the district court.[2]

---

[2]This claim was resolved essentially as one involving alleged disability from a back injury. To the degree that at oral argument counsel for claimant seemed to suggest that disability should have been found as a result of the totality of plaintiff's medical conditions, this claim fails since there is a lack of objective medical evidence in the record to support such a claim.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I do not believe that substantial evidence supports the ALJ's determination that Roger Tilley was able to return to his previous employment as a machine operator, I respectfully dissent.

I agree with the majority that there is substantial evidence indicating that, while Tilley worked as a machine operator, he was able to sit for at least part of the day. I can find no evidence, however, that Tilley was able to "sit and stand *as needed,*" A.R. at 24 (emphasis added), a facet of the ALJ's RFC determination that the majority opinion makes no effort to address. The ALJ reasoned that because Tilley was responsible for relieving workers when they took their breaks, Tilley "did not perform [his] job in a constant position." *Id*. All this indicates, however, is that Tilley might have more opportunities to alternate his position than the average machine operator—there is no indication that Tilley had any control over when those opportunities occurred. Once a relief worker assumes control of machine, he presumably must continue to work at that machine until the original operator returns. Perhaps that length of time is short enough to accommodate Tilley's specific limitations, but there is simply no evidence to suggest that this is so.

At Stage Four of the sequential analysis, Tilley has the burden of proof. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Although there is no evidence in the record indicating that Tilley could *not* sit as needed while working as a machine operator, there is also no evidence that he could sit or stand as needed. The claimant is not solely responsible for developing the record with respect to the physical demands of his previous job. *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). Rather, under the Social

Security Program Policy Statement, the ALJ is required to make specific findings of fact with respect to "the physical and mental demands of [the claimant's] past job/occupation," Soc. Sec. Rul. 82-62, 1982 WL 31386, at *4 (1982), and must make "every effort . . . to secure evidence that resolves the issue as clearly and explicitly as circumstances permit," *id.* at *3; *see also Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). Therefore, pursuant to Soc. Sec. Rul. 82-62, I would remand Tilley's case to the ALJ to develop the record with respect to whether Tilley's previous position as a machine operator allowed him to sit and stand as needed.

I respectfully dissent.