NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0297n.06

Case No. 18-2300

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 10, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MELISSA SUE TUCKER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: MERRITT, THAPAR, and READLER, Circuit Judges.

**MERRITT, Circuit Judge.** Melissa Sue Tucker, now 38 years of age, challenges the decision of an administrative law judge of the Social Security Administration denying her applications for social security disability benefits. Because the decision of the administrative law judge is supported by substantial evidence, we affirm the judgment of the district court affirming the administrative law judge's decision.

## I.

Tucker underwent hip surgeries at ages 12 and 14, and she has experienced pain and other physical difficulties from those procedures since that time. She had further surgery in 2014 to remove the "pins" or hardware from her hips. She walks without a cane or other assistance, although she complains of pain, for which she takes over-the-counter pain relievers. Hr'g Tr. 7-8.

Starting in 2012, Tucker also began to experience mental and psychological problems as well, including anxiety and depression. She successfully completed high school by obtaining a GED, but has no past relevant work experience. ALJ Decision at 14. She testified that she cannot work because she misses too many days due to pain from her hips, as well as issues with her bipolar disorder and anxiety. *Id*. On December 5, 2013, and March 17, 2014, Tucker filed applications for disability insurance benefits and supplemental security income, respectively, alleging that she has been disabled since October 15, 1992, due to a hip impairment, bipolar disorder, anxiety, post-traumatic stress disorder, and suicidal tendencies.[1]

After Tucker's latest applications were denied in 2014, she requested a hearing before an administrative law judge. On December 16, 2015, Tucker, who was represented by counsel, appeared before an administrative law judge for a hearing. Tucker and an independent vocational expert testified. In a written decision dated February 9, 2016, the administrative law judge denied Tucker's claim. The Appeals Council declined to review the administrative law judge's determination and that decision became the Commissioner's final decision. Tucker subsequently initiated an action in federal court pursuant to 42 U.S.C. § 405(g), seeking judicial review of the administrative law judge's decision. A magistrate judge issued a Report and Recommendation recommending that the district court affirm the administrative law judge's decision. *Tucker v. Comm'r of Soc. Sec*., No. 17-cv-480, 2018 WL 4290465 (W.D. Mich. Apr. 6, 2018). The district court adopted the Report and Recommendation. *Tucker v. Comm'r of Soc. Sec*., No. 17-cv-480, 2018 WL 4286395 (W.D. Mich. Sept. 7, 2018), and this timely appeal followed.

---

[1] Tucker previously filed applications that were denied on November 25, 2009. She did not appeal the denials. Consequently, the administrative law judge limited her decision to Tucker's current claims for the period beginning on November 26, 2009, through that date of the administrative decision on February 9, 2016.

**II.**

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A).

In finding that Tucker was not disabled, the administrative law judge performed the required five-step analysis.[2] *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). If the administrative law judge makes a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a). The regulations also provide that if a claimant, such as Tucker, suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity at the fourth step.

---

[2]The five-step sequential analysis states:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement ... or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

*See* 20 C.F.R. §§ 404.1545, 416.945. Residual functional capacity is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to show that other jobs in significant numbers exist in the national economy that the claimant could perform given her residual functional capacity and considering other relevant vocational factors. *Id.*

Applying the five-step analysis in this case, the administrative law judge first found that Tucker has not engaged in any substantial gainful activity since her disability onset date. Second, the administrative law judge determined that Tucker suffered from the following severe impairments: (1) status post remote bilateral hip percutaneous screw fixation for slipped capital femoral epiphysis; (2) bilateral hardware removal; (3) trochanteric bursitis of the bilateral hips; (4) bilateral knee patellofemoral syndrome; (5) asthma; (6) obesity; (7) bipolar disorder; (8) anxiety disorder; (9) post-traumatic stress disorder; (10) social phobia; and (11) a history of cannabis abuse presently in remission per the claimant's reports. ALJ Decision at 4.

Third, the administrative law judge concluded that Tucker's impairments did not meet or medically equal any of the listed impairments. In addition to addressing Tucker's physical impairments with her hips and knees, asthma and obesity, the administrative law judge specifically considered the severity of Tucker's mental impairments singly and in combination, and found that they did not meet the listed criteria. 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at 5-7.

At the next step, the administrative law judge must determine the claimant's "residual functional capacity." When assessing a claimant's residual functional capacity, the regulations require consideration of the physical, mental, and sensory requirements of work. 20 C.F.R. § 404.1545(a)(4).[3] With regard to the administrative law judge's evaluation of mental abilities in determining a claimant's residual functional capacity, the regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c). The administrative law judge in her decision detailed Tucker's medical history concerning her mental and psychological disorders. ALJ Decision at 10-13. She also considered Tucker's own account of her condition at the hearing, as well as the observations of Tucker's father whom Tucker saw regularly. The administrative law judge recognized Tucker's occasional bouts with depression and anxiety, but noted that her mental status examinations have been largely normal and she had minimal or no impairment of memory, concentration, attention or judgment. *Id*. at 5-6. The administrative law judge also found that Tucker attends to daily living activities, including childcare and housework. *Id*. at 10-13.

Given this evidence, the administrative law judge found that Tucker retained the residual functional capacity to perform a significant range of unskilled light work, subject to the following

---

[3] The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in the Listing of Impairments. The residual functional capacity assessment reflects the degree of limitation the administrative law judge found in the "paragraph B" mental function analysis. To meet the stated "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

limitations: (1) during an 8-hour workday, she can stand/walk for 4 hours; (2) she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (3) she can never climb ladders, ropes, or scaffolds; (4) she should avoid concentrated exposure to fumes, odors, dusts, gases, and other like respiratory irritants; (5) she can understand, remember, and carry out simple instructions; (6) she can make judgments on simple work-related decisions; (7) she can tolerate occasional interactions with supervisors and co-workers; (8) she should avoid work activity involving direct contact with the general public; (9) she can tolerate usual work situations and deal with changes in a routine work setting. *Id*. at 7.

The administrative law judge found that Tucker had no past relevant work experience, so the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Tucker could perform given her limitations. The vocational expert testified that there existed approximately 225,000 jobs in the national economy, 7,000 of them in Indiana where Tucker resided at the time of the hearing, that an individual with Tucker's residual functional capacity could perform, including with the limitations noted. These include mail sorter, assembler and photocopier operator. *Id*. at 14-15; *see also* Hr'g Tr. at 40-43. The administrative law judge determined that given Tucker's residual functional capacity and vocational profile, there were a significant number of jobs in the national economy that Tucker could perform. Based on this last finding, the administrative law judge concluded that Tucker was not "disabled."

## III.

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d

679, 681 (6th Cir. 1989). Our jurisdiction in this case is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).

Tucker's arguments on appeal are limited to challenging the administrative law judge's findings of her mental residual functional capacity, focusing particularly on the weight given the opinion of one-time consultative examiner Dr. Boen. She contends that the amount of weight afforded by the administrative law judge to his opinion was "defective and vague." Plaintiff's Br. at 17. She argues that Dr. Boen's statement in his opinion that Tucker "could understand what she was asked to do on a job but she would have difficulty remembering it" was "work-preclusive," *id.*, interpreting the statement to mean that she could not work at all at any job. Tucker argues, therefore, that the statement is inconsistent with the administrative law judge's mental residual functional capacity finding. Tucker also generally challenges the terms used by the administrative law judge to accord differing levels of deference to the medical evidence, such as "little weight," "some weight," "partial weight," and "limited weight" as "vague and ambiguous," rendering the decision incapable of being "meaningfully reviewed." *Id.* Tucker also argues that the administrative law judge improperly "cherry picked" limitations from Dr. Boen's opinion in making the mental residual functional capacity finding.

The administrative law judge must "consider all evidence available" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations require the administrative law judge to weigh the value of "medical opinions" pursuant to a multi-factor test. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* § 404.1527(d). The administrative law

judge must use a balancing test to determine the probative value of all medical opinions from acceptable sources, using six listed factors. *Id.* § 404.1527(c). The administrative law judge must consider whether the source examined the claimant, if the source is a "treating source" and, if so, look at the length and frequency of the treatment relationship and the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, any specialization of the treating source, and any other factors that tend to support or contradict the opinion of the source. *Id.*

Tucker challenges the weight given to the opinion of one-time consultative examiner Dan Boen, Ph.D. On May 6, 2014, Tucker underwent a consultative examination by Dr. Boen, reporting to him that she was feeling "sad and depressed, has trouble concentrating and focusing, is nervous and shaky in social situations, and has anxiety and panic attacks." Dr. Boen Report at 1-2. She reported that she had taken psychotropic medications on and off for several years, and had been hospitalized briefly for suicidal thoughts. She reported that her medication regimen was recently modified with beneficial effect on her symptoms with no side effects. Specifically, Dr. Boen reported:

> She was oriented to time, place, and person. She can handle her own money. She was responsive in her speech and cooperative with the examiner. Her mood and affect were normal. She is on psychotropic medication. She has had suicidal and auditory hallucinations. Her consciousness was normal. Her concentration was normal. Her memory was moderately deficient. Her fund of information and level of intelligence were normal. Her judgment was mildly deficient. Her level of insight was normal.

*Id.* at 4. Dr. Boen diagnosed Tucker with bipolar disorder, social phobia, and cannabis abuse. *Id.* He concluded that Tucker "could understand what she was asked to do on a job but she would have difficulty remembering it." *Id.* Dr. Boen further concluded that Tucker "could concentrate and stay on task," but "would have trouble relating to both coworkers and her boss." *Id.*

While the administrative law judge characterized Dr. Boen's opinion as "rather vague," she found it "broadly consistent with the evidence of record as a whole showing the claimant's residual mood difficulties and occasional cognitive impairments." ALJ Decision at 13. The administrative law judge noted that Dr. Boen was not a treating physician for Tucker, and she afforded his opinion "some weight." Because Dr. Boen examined Tucker only once, his opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 571-72 (6th Cir. 1989). Additionally, the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion). No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. The administrative law judge made that connection here.

Dr. Boen's opinion articulates no specific functional limitations from which Tucker suffers, and his opinion is consistent with the mental residual functional capacity finding of the administrative law judge. Tucker interprets Dr. Boen's statement that she would experience "difficulty" remembering instructions as a complete inability to remember instructions. Tucker's contention that this statement in the opinion renders her unable to work at all is a mischaracterization of his report as a whole and takes one isolated statement out of context. Furthermore, to the extent that Tucker interprets Dr. Boen's opinion as asserting that Tucker is more limited than the administrative law judge's mental residual functional capacity finding recognized, that interpretation is contradicted by the medical evidence as a whole in the record.

The administrative law judge articulated her rationale for discounting Dr. Boen's opinion and that rationale is supported by substantial evidence.

Relatedly, Tucker also complains that the administrative law judge "cherry picked" certain observations from Dr. Boen's report, pointing to Tucker's less-severe mental limitations, while arguing in the same breath that the administrative law judge failed to place sufficient reliance on his opinion. The administrative law judge's reliance on Dr. Boen's report was consistent with the regulations and our precedent because he reviewed all the medical evidence, and, as the administrative law judge found, his report was consistent with that evidence. He properly cited abnormal as well as normal examination findings, as noted by the administrative law judge. Tucker's argument that the administrative law judge should have found that Dr. Boen's finding that Tucker "could not remember instructions" was "work-preclusive" is unsupported by the record evidence as a whole.

For the foregoing reasons, we affirm the judgment of the district court upholding the Commissioner's decision.